

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RTP:NR
F.#2018R00509

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 23, 2019

By ECF

The Honorable Dora L. Irizarry
Chief United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Mark Weissman
>      Criminal Docket No. 18-524 (DLI)

Dear Chief Judge Irizarry:

The government respectfully submits this letter in connection with the sentencing of the above-referenced defendant, which is currently scheduled for November 4, 2019 at 11:00 a.m.[1]  For the reasons set forth herein, the government respectfully requests that the Court sentence to the defendant to a term of incarceration 6 to 12 months and impose a fine of between $4,000 and $40,000, both of which are consistent with the advisory range of incarceration set forth in the United States Sentencing Guidelines (the "Guidelines").

Background and Offense Conduct

On June 12, 2019, the defendant pleaded guilty, pursuant to a plea agreement, to Count Three of the indictment in the above-reference case, which charged that the

---

[1]  The undersigned apologizes that this submission is being made to the Court subsequent to the Court's deadline for the government's sentencing submissions, which are to be made fourteen days in advance of the sentencing date.   By way of explanation, but not excuse, the undersigned was on trial before the Honorable Kiyo A. Matsumoto from October 15 through October 22, 2019.   The defendant's counsel has indicated that he intends to seek a brief adjournment of the sentencing date, which the government does not oppose.

defendant and his co-conspirators had conspired to obstruct an official proceeding, specifically the execution of the judgment and order of forfeiture pending against Andrew Tepfer that had been entered by this Court in United States v. Andrew Tepfer, et al., Criminal Docket, No. 10-600 (DLI), on or about December 12, 2014. (Presentence Investigation Report ("PSR") at ¶ 1). As part of the plea agreement in this case, the defendant stipulated that the applicable offense level under the Guidelines is 12. Subsequent to a reduction for acceptance of responsibility, the defendant's Total Offense Level becomes a 10. Assuming the defendant falls within Criminal History Category I, the advisory range of incarceration is 6 to 12 months. The Probation Department's estimate of the applicable Guidelines range is the same as that set forth in the plea agreement. (PSR at ¶ 40).

The defendant's role in the instant offense began in February 2017 when, acting on behalf of Andrew Tepfer, the defendant approached the victim in this case (the "Victim") and informed the Victim that Tepfer wanted $1,000,000 to avoid getting the Victim in unspecified "trouble." (PSR at ¶ 5).[2] Weissman confirmed via a subsequent text message that he was acting on behalf of Tepfer in delivering this message. (Id.). Later, in March 2017, Weissman informed the Victim that the amount being demanded had increased to $5,000,000. (PSR at ¶ 6).

A year later, in March 2018, the defendant resumed his communications with the Victim. The defendant informed the Victim that Tepfer had identified a rabbi who would allow any funds paid by the Victim to be paid through the rabbi's charity. (PSR at ¶ 7). At a subsequent meeting on March 2018, Weissman and the Victim discussed that any funds destined for Tepfer could not be paid in Tepfer's name due to Tepfer's outstanding restitution obligations. Weissman further indicated that Tepfer was seeking a large upfront payment and then smaller subsequent payments. (PSR at ¶ 8). Weissman subsequently indicated that Tepfer was seeking a single payout and not a "payout over time." (PSR at ¶ 9).

On April 19, 2018, the defendant and the Victim discussed that a rabbi would serve as an intermediary and hold any incriminating documents that Tepfer might possess, destroying those documents once a payment of $6,000,000 was made. (PSR at ¶ 10). Weissman discussed the possibility of structuring the payment like a personal injury settlement. (Id.).

---

[2] As noted in the PSR, subsequent to this date the Victim was acting at the direction of federal law enforcement agents. This included representations about the availability of funds overseas which, in fact, the Victim did not possess.

On May 11, 2018, the defendant arranged a meeting between the Victim and Rabbi Igal Haimoff, who had agreed to allow the use of his charity to facilitate the transfer of the extorted funds. The defendant agreed to prepare a letter that would falsely identify any funds transferred to the charity as a charitable donation. (PSR at ¶ 15). The defendant subsequently emailed a copy of the fraudulent donation letter, which referenced a sum of $6,000,000, to the Victim. (PSR at ¶ 16).

In late May 2018, the defendant sent messages to the Victim indicating that he no longer wanted to be involved in the transaction and asking the Victim to contact Haimoff directly. (PSR at ¶ 19). The defendant was ultimately arrested on June 18, 2018. ((PSR at ¶ 22). Additionally, as set forth in the Addendum to the PSR, subsequent to his arrest, the defendant's counsel has provided information to the government with respect to a business being operated by the Victim. (Addendum to PSR).

The Section 3553 Factors

As the Court is well aware, 18 U.S.C. § 3553(a) directs the Court to consider a number of factors when imposing sentencing. Here, two seem particularly applicable: (1) the "nature and circumstances of the offense and the history and characteristics of the defendant," (18 U.S.C. § 3553(a)(1)) and (2) the need to "promote respect for the law." 18 U.S.C. § 3553(a)(2). In this case, the government respectfully submits that those factors weigh heavily in favor of the imposition of an incarceratory sentence and a fine within the range set by the advisory Guidelines.

As an initial matter, the defendant is an attorney and has been a member of the New York State bar. (PSR at ¶ 64). As such, he was well positioned to understand that the extortionate arrangement proposed by Tepfer was not only improper, but illegal. Furthermore, as noted above, his conversations with the Victim made plain that he understood that this payment was being arranged to assist Tepfer in avoiding his Court-imposed restitution obligations. The notion that the defendant would make himself part of an effort to deceive the Court and avoid restitution to victims of Tepfer's prior criminal conduct reflects a wanton disrespect for the law that cannot be explained away by his misplaced loyalty to the Tepfer. As an attorney, Weissman necessarily knew better and yet elected to repeatedly take steps to help Tepfer evade the law.

In his objections to the Presentence Report, dated October 3, 2019, the defendant further noted that he continued to assist Tepfer "out of a sense of duty." (October 3 Letter at 2). This argument rings hollow. As an initial matter, the defendant did not make a single, ill-advised outreach to the Victim on Tepfer's behalf. In 2017 and again in 2018, he repeatedly engaged in conduct designed to frustrate the Court's restitution order in an effort

to obtain money from the Victim for the benefit of Tepfer. Further, as set forth in the PSR, the defendant is a man of considerable means who owns more than 10 properties in the New York City area. (PSR at ¶¶ 69-70 and Addendum to PSR). Had his sole concern been the defendant's financial wellbeing, he certainly had the means to offer such support to Tepfer in a manner not designed to avoid Tepfer's obligations to the Court and the victims of Tepfer's prior criminal conduct.

The imposition of an incarceratory sentence is necessary to send a strong message that efforts to avoid Court-ordered restitution are, in effect, an attempt to victimize the original victims a second time. The defendant was not an unsophisticated individual who simply did not know any better – he was an educated man and an attorney who should have immediately recognized that any friendship or loyalty he had to Tepfer could never be an excuse for obstructing the Court's order.

Conclusion

For all of the foregoing reasons, the government respectfully requests that the Court impose an incarceratory sentence and impose a fine within the advisory Guidelines range.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:          /s/
Nathan Reilly
Assistant U.S. Attorney
(718) 254-6196

cc:     Counsel of Record (by email and ECF)
        Probation Officer Jennifer Fisher

4